# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| TERRY HOLCOMB, SR., SCOTT SMITH, AMOS JAMES POSTELL, CHRISTOPHER JOHN GRISHAM, JACOB CORDOVA, TRAVIS KUENSTLER, and JOSEPH WALKER, **Plaintiffs,** | |
| -vs- | **Case No. A-15-CA-748-SS** |
| STEVEN MCCRAW, JOSE ORTIZ, ROLANDO RIVAS, JOHN PELATH, DAN BRISTOW, RYAN MCKITTRICK, ROY LYTLE, ROOSEVELT HATCHER, ERIC BRACKELSBERG, JOHN LAND, EUGENIO CRUZ, M. ERIC PEEL, RICHARD JUAREZ, BERTHA FARIAS, TODD ASHBY, RAUL VARGAS, ROBERT ROSEBERRY, SCOTT HOUGHTON, and JOHN DOES A-Z, **Defendants.** | |

## O R D E R

BE IT REMEMBERED on the 9th day of June 2017, the Court held a hearing in the above-styled cause and the parties appeared through counsel. Before the Court are Defendants' Motion for Summary Judgment [#65], Plaintiffs' Response [#56] in opposition, and Defendants' Reply [#67] in support. Having considered the documents, the arguments of counsel, the governing law, and the file as a whole, the Court now enters the following opinion and order.

This is a civil rights action brought by gun rights activists, each of whom was arrested for criminal trespass while advocating for "open carry"—the practice of openly carrying firearms in public—by displaying fake guns at the Texas State Capitol. Defendants, all of whom are sued in their

individual capacities, were Texas Department of Public Safety (DPS) State Troopers assigned to the Texas State Capitol Complex at the time of the open-carry demonstrations.

Plaintiffs bring suit under 42 U.S.C. § 1983, alleging violations of their First, Fourth, and Fourteenth Amendment rights under the United States Constitution. Previously, the Court granted in part and denied in part Defendants' motion to dismiss, finding a number of Plaintiffs' federal constitutional claims failed to allege personal involvement of the individual Defendants, some Defendants were entitled to qualified immunity, and Plaintiffs' state constitutional claims were either moot or not viable. Order of Apr. 14, 2016 [#52].

Defendants now move for summary judgment on all remaining claims brought against them. Mot. Summ. J. [#65]. The parties agree the claims of three Plaintiffs—Christopher John Grisham, Joseph Walker, and Travis Kuenstler—remain. *Id.* at 3–4; Resp. [#66] at 3–12.[1]

## Background

### I.      Capitol Security

DPS "has primary responsibility for law enforcement and security services on the Capitol Complex." Tex. Gov't Code § 411.062(a). As part of that responsibility, DPS is charged with adopting "rules relating to security of persons and access to and protection of the grounds, public buildings, and property of the state within the Capitol Complex . . . ." *Id.* § 411.062(d). The Texas

---

[1] Defendants also move for summary judgment on Plaintiff Amos James Postell's excessive force claim. Mot. Summ. J. [#65] at 3. However, Plaintiffs contend the Court previously disposed of Postell's claim and thus do not respond to Defendants' motion for summary judgment as it relates to Postell. Resp. [#66] at 2. In return, Defendants argue Postell waives any remaining excessive force claim by not responding to Defendants' motion for summary judgment. Reply Mot. Summ. J. [#67] at 1–2. To the extent Postell's excessive force claim survived Defendants' motion to dismiss, the Court agrees Postell waived any such excessive force claims by not responding to Defendants' motion for summary judgment. *See Haubold v. Intermedics, Inc.*, 11 F.3d 1333, 1336 (5th Cir. 1994) (finding claims not raised in response to summary judgment were waived).

State Capitol is located at the heart of the Capitol Complex, surrounded by a segment of property known as the Capitol Grounds.

On October 17, 2013, the Texas Public Safety Commission (Commission)—the entity responsible for overseeing DPS—held a public meeting. Mot. Summ. J. [#65-1] Ex. A (Oct. 17, 2013 Minutes) at 1. One of the Commission's items of business included reviewing DPS's role in providing security for the Capitol Complex. DPS's general counsel summarized Texas law concerning weapons and current enforcement efforts. *Id.* at 3. In particular, the general counsel summarized the "[m]easures currently in place to give guidance to officers":

> 1. Right of [Concealed Handgun Licence (CHL)] Holders to lawfully carry acknowledged throughout Capital Complex[;]
> 2. "Open Carry" weapons allowed in Capitol Complex outside of Capitol Grounds except if carried in manner calculated to alarm[;]
> 3. Firearms and other deadly weapons carried other than as authorized under CHL authority prohibited on Capital Grounds, Capitol Building, and Capitol Extension[; and]
> 4. Individuals will be afforded opportunity to comply with officer request prior to consideration of enforcement action[.]

*Id.* at 3–4.

## II.  Grisham's Arrest

On November 11, 2013, Grisham, the leader of an open-carry activist organization, stood on the steps of the Capitol Building speaking to a group of approximately fifteen fellow activists. Resp. [#66-1] Ex. A (Grisham Aff.) ¶ 5. The small group of activists featured individuals carrying flags, video cameras, and handguns. *Id.* Ex. H (Pls.' Grisham Video) at 02:54–58; *see also* Mot. Summ. J. [#65-7] Ex. G (Defs.' Grisham Video).[2] Grisham was wearing a belt holster with a toy pistol in

---

[2] Plaintiffs and Defendants both offer videos of Grisham's arrest. Plaintiffs' video was taken by Defendant Scott Houghton's body camera. Resp. [#66] at 3. Defendants' video was taken by a person attending Grisham's speech and uploaded to YouTube. Mot. Summ. J. [#56] at 10–11. Plaintiffs and Defendants' videos depict the same events but from different perspectives. Neither party objects to the other party's video.

it. *See* Pls.' Grisham Video; Defs.' Grisham Video. At no point did Grisham pull the toy pistol out of the holster or make a motion to do so. *See id.*

While Grisham was speaking to the other activists, Defendants Scott Houghton and Roosevelt Hatcher approached the group. Pls.' Grisham Video at 2:55; Defs.' Grisham Video at 0:22. Houghton announced, "Gentlemen, y'all gonna need to take your firearms off the Capitol Grounds." Pls.' Grisham Video at 03:01; Defs.' Grisham Video at 0:28. Grisham responded, "I don't have a firearm, sir." Pls.' Grisham Video at 03:02; Defs.' Grisham Video at 0:32. Houghton repeated his request for the activists to take their firearms off the Capitol Grounds. Pls.' Grisham Video at 03:05; Defs.' Grisham Video at 0:34. Grisham replied, "No sir, we are not breaking any laws." Pls.' Grisham Video at 3:10; Defs.' Grisham Video at 0:37.

In response, Houghton stated, "You are not allowed to have your weapons here on the grounds." Pls.' Grisham Video at 3:13; Defs.' Grisham Video at 0:40. Grisham then questioned "According to what, sir?" Pls.' Grisham Video at 3:14; Defs.' Grisham Video at 0:42. Houghton answered with "This is the last time I am going to tell you—" when Grisham interrupted, "No sir, please tell me what law I am breaking." Pls.' Grisham Video at 3:16; Defs.' Grisham Video at 0:45. Houghton then stated "Ok, sir, please take your weapons off the grounds." Pls.' Grisham Video at 3:21; Defs.' Grisham Video at 0:48. Grisham questioned, "But under what authority are you telling me to leave?" Pls.' Grisham Video at 3:23; Defs.' Grisham Video at 0:52.

After this question, Houghton ordered Grisham to turn around and informed Grisham he was under arrest for criminal trespass. Pls.' Grisham Video at 3:24; Defs.' Grisham Video at 0:54. As Houghton reached for him, Grisham backed away from the officers, replying "Woah, woah, for what?" Pls.' Grisham Video at 3:27; Defs.' Grisham Video at 0:56. Houghton repeated his order for

Grisham to turn around and Hatcher also ordered Grisham to turn around. Pls.' Grisham Video at 3:28; Defs.' Grisham Video at 0:56. Grisham did not comply and the officers reached for him. Pls.' Grisham Video at 3:28; Defs.' Grisham Video at 0:57. Houghton and Hatcher moved closer to Grisham and started trying to force his arms behind his back. Pls.' Grisham Video at 3:29–32; Defs.' Grisham Video at 0:57–1:00. Hatcher again ordered Grisham to turn around and repeated that Grisham was under arrest. Pls.' Grisham Video at 3:33–35; Defs.' Grisham Video at 1:00–03. At no point did Grisham comply with the officers' orders to turn around. *See* Pls.' Grisham Video; Defs.' Grisham Video.

While the crowd shouted at the officers, Grisham shouted, "I am not breaking the law." Defs.' Grisham Video at 1:00. Simultaneously, Hatcher continued to order, "You are under arrest. Put your arms behind your back, sir." Pls.' Grisham Video at 3:35–38; Defs.' Grisham Video at 1:00. Twice, Hatcher shouted, "Do not resist." Pls.' Grisham Video at 3:38; Defs.' Grisham Video at 1:00–12. As the officers tried to get the handcuffs on Grisham, he shouted, "Don't f—ing break my arm, a—." Pls.' Grisham Video at 3:39; Defs.' Grisham Video at 1:07. Grisham also shouted, "I am not resisting. Shut the f— up, shut up" Pls.' Grisham Video at 3:44; Defs.' Grisham Video at 1:14.

After the handcuffs were around Grisham's wrists, he announced, "Do you realize that I am carrying a toy. Did you even bother to check?" Pls.' Grisham Video at 3:58; Defs.' Grisham Video at 1:28. Houghton responded, "No sir, I asked you to take them off the grounds." Pls.' Grisham Video at 4:03.

While the officers continued to secure Grisham, the crowd jeered at the officers. *See* Pls.' Grisham Video; Defs.' Grisham Video. After the handcuffs were secure, Grisham commented several times, "I am not carrying a firearm." Pls.' Grisham Video at 4:13–15; Defs.' Grisham Video

at 1:44. Shortly thereafter, the officers escorted Grisham into the Capitol Building. Pls.' Grisham Video at 4:25–4:30; Defs.' Grisham Video at 1:50–2:04. Grisham was charged with criminal trespass and resisting arrest. Mot. Summ. J [#65-5] Ex. E (Grisham's Offense Report) at 1.The same day Grisham was arrested, a Travis County magistrate judge found probable cause for both charges and set bail. *Id.* at 7–8.

### III. Kuenstler's Arrest

On February 13, 2015, Kuenstler attempted to enter the Capitol Building to testify in favor of open-carry legislation. Resp. [#66] at 12. While going through security at the entrance, Kuenstler "openly carried" a plastic toy pistol in a belt holster, which he removed and placed on the security conveyor. Mot. Summ. J. [#65-11] Ex. I (Kuenstler Video).

Defendant Rolando Rivas examined the toy pistol and told Kuenstler he would not be permitted to enter the building unless he took the pistol back to his car. Mot. Summ. J. [#65-8] Ex. H-1 (Kuenstler's Offense Report) at 5. Kuenstler refused to put the pistol in his car, and Rivas arrested him for criminal trespass. *Id.* A Travis County magistrate judge found there was probable cause to support Kuenstler's arrest for criminal trespass. *Id.* at 10–11.

### IV. Walker's Arrest

Finally, on April 17, 2015, Walker, attempted to enter the Capitol Building to watch debate on pending open-carry legislation. Resp. [#66-7] Ex. F (Walker Aff.) ¶ 3. Walker "openly carried" a blue plastic gun in a belt holster on his hip. *Id.* ¶ 4. One of the security guards laughed upon seeing the blue plastic gun while another guard alerted Defendant Bertha Farias about the blue plastic gun. *Id.* ¶¶ 6–7. Farias told Walker he would have to leave the blue plastic gun in his vehicle to enter the

Capitol. *Id.* ¶ 8. Walker refused to return the blue plastic gun to his vehicle, and Farias arrested him for criminal trespass. *Id.* ¶¶ 8, 10, 12.

## V. Procedural History

Plaintiffs filed this action on August 24, 2015. *See* Compl. [#1]. Defendants responded with a number of motions for partial dismissal and for more definite statement, and on November 3, 2015, the Court granted the motion for more definite statement, describing the complaint "as an assortment of statements of political propaganda[.]" Order of Nov. 3, 2015 [#29].

Plaintiffs filed their first amended complaint on November 23, 2015, *see* First Am. Compl. [#36], and Defendants moved to dismiss, *see* Mot. Dismiss [#38]. Following a hearing on January 14, 2016, the Court ordered Plaintiffs to file a second amended complaint and dismissed Defendants' motion to dismiss without prejudice. *See* Order of Jan. 15, 2016 [#45]. Plaintiffs filed a second amended complaint, *see* Second Am. Compl. [#46], and again the Court entertained a motion to dismiss from Defendants, *see* Mot. Dismiss [#48]. After sorting through Plaintiffs' allegations, the Court dismissed a majority of claims from the suit because Plaintiffs failed to allege personal involvement for several individual Defendants, some Defendants were entitled to qualified immunity, and Plaintiffs' state constitutional claims were either moot or not pled against proper parties. Order of Apr. 14, 2016 [#52]. Only the § 1983 claims arising from Plaintiffs Grisham, Kuenstler, and Walker's arrests against Defendants Hatcher, Houghton, Rivas, and Farias remain disputed for summary judgment purposes. *Id.* at 25.

**Analysis**

## I.    Legal Standards

### A.    Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required

-8-

to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## B.     Qualified Immunity

Qualified immunity shields "government officials performing discretionary functions" from civil liability for claims under federal law "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kinney v. Weaver*, 367 F.3d 337, 347–48 (5th Cir. 2004) (en banc).

A plaintiff bears the burden of negating a properly raised qualified immunity defense. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir.2008) (internal quotation marks omitted). To properly raise a qualified immunity defense,

> [t]he defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.

*Id.* (citation omitted); *see also Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997) ("We do not

require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." (internal quotation marks omitted)).

Claims of qualified immunity require a two-step analysis: an official is entitled to qualified immunity unless the plaintiff has cited sufficient evidence to raise a genuine issue of material fact suggesting (1) the defendant's conduct violated an actual statutory or constitutional right and (2) the defendant's "'actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.'" *Baeza v. Becker*, No. SA-14-CV-659-XR, 2015 WL 6127190, at *4 (W.D. Tex. Oct. 15, 2015) (quoting *Brumfield*, 551 F.3d at 326).

To be clearly established, "a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (internal quotation marks, citations, and alterations omitted). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Id.* (internal quotation marks and citations omitted).

Even if an official's conduct violates a clearly established right, the official is "nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. Cty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). "The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's asserted constitutional or federal statutory right." *Cozzo v. Tangipahoa Par. Council*, 279 F.3d 273, 284 (5th Cir. 2002) (internal quotation marks and citations omitted).

## II.     Application

Plaintiffs' complaint asserts Defendants violated Plaintiffs' First, Fourth, and Fourteenth Amendment rights in variety of ways, including by "us[ing] excessive and unreasonable force on Plaintiff Grisham," Second Am. Compl. [#46] ¶ 164, "preventing Plaintiffs from exercising their First Amendment rights to be present in a public forum, gather with likeminded individuals, and speak on a matter of public concern," *id.* ¶ 165, "arrest[ing] Plaintiffs in retaliation for their speech regarding the Second Amendment right to carry guns." *id.* ¶ 166. For simplification and clarity, the Court construes Plaintiffs' claims as allegations of excessive force, violation of rights guaranteed under the First Amendment, and false arrest. The Court first addresses Grisham's excessive force claim against Hatcher—the only surviving excessive force claim—followed by the remaining claims alleging violation of rights under the First Amendment and false arrest.

## A.     Excessive Use of Force

Defendants move for summary judgment on Grisham's excessive use of force claim against Hatcher, arguing there is no evidence Grisham suffered any injury and contending Hatcher used minimal force to arrest Grisham. Mot. Summ. J. [#65] at 11. Plaintiffs neglect to directly to respond to Defendants' motion for summary judgment on Grisham's excessive use of force claim. *See* Resp. [#66] (failing to even reference Grisham's excessive force claim). Notwithstanding Plaintiffs' silence, the Court nonetheless examines whether a genuine dispute as to any material fact exists.

The Fourth Amendment right to be free from excessive force during an arrest is clearly established. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). To overcome an officer's defense of qualified immunity in the context of an excessive force claim, the plaintiff must show "(1) an injury, (2) which resulted directly and only from the use of force that was excessive, and (3) the

excessiveness of which was clearly unreasonable." *Id.* at 628 (internal quotation marks and citation omitted). Under Fifth Circuit precedent, the latter two inquiries are "often intertwined." *Id.* Thus, the Court considers the second and third inquiries together below.

First, "the Fifth Circuit requires a plaintiff to have 'suffered at least some sort of injury.'" *Curtis v. Mosher*, No. 3:12-CV-4866-B, 2014 WL 2452571, at *8 (N.D. Tex. June 2, 2014) (quoting *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993)). The "injury must be more than a *de minimis* injury and must be evaluated in the context in which the force was deployed." *Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005).

Defendants provided evidence indicating Grisham "abandon[s] any claims for any medical damages relating to the arrest." Mot. Summ. J. [#65-6] Ex. F (Request for Production Resp.) Consequently, Defendants argue any claim of injury resulting from Hatcher's alleged excessive use of force should be considered abandoned. *Id.* at 11. Grisham does not respond to Defendants' argument, failing to offer any argument or evidence Grisham was injured by an allegedly excessive use of force. *See* Resp. [#65]. Thus, Grisham has not demonstrated a genuine dispute and fails to satisfy the injury element as a matter of law. *See Adams*, 465 F.3d at 164 ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."); *see also Freeman*, 483 F.3d at 416–17 ("[M]inor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force.").

Although Grisham has not demonstrated a genuine fact issue on the injury element, the Court nevertheless turns to the remaining inquiries—whether the use of force was clearly excessive and unreasonable. The standard for determining whether the use of force is objectively unreasonable is

firmly established: it is a fact-sensitive inquiry that turns on the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Additional considerations that "may bear on the reasonableness or unreasonableness of the force used [include]: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

The totality of the circumstances in this case do not support finding Hatcher's use of force was objectively unreasonable. At most, Grisham alleges Hatcher "grabbed" Grisham's left arm, "forcefully yanked" it behind Grisham's back, and "forced Grisham's arm into an even more painful position" while handcuffing him. Second Am. Compl. [#46] ¶¶ 110, 112, 113. While the alleged underlying offense, criminal trespass, was not particularly serious, the video evidence provided by both parties shows Grisham did not comply with repeated orders to turn around following Houghton's announcement Grisham was under arrest. *See* Pls.' Grisham Video; Defs.' Grisham Video. Even assuming Grisham was not actively resisting arrest, "some degree of physical coercion" was necessary to make the arrest as Grisham did not turn around when ordered. *See Graham*, 490 U.S. at 396.

Moreover, although Grisham's weapon turned out to be fake, Grisham did not inform the officers his weapon was a toy until after he had been placed under arrest and handcuffed. Pls.' Grisham Video at 3:58; Defs.' Grisham Video at 1:28. Additionally, at the same time Hatcher and

Houghton were arresting Grisham, onlookers—several of whom appeared to have weapons—were shouting at the officers. *See* Pls.' Grisham Video; Defs.' Grisham Video. The combination of the lack of compliance by Grisham, the lack of injury to Grisham, the limited use of force by Hatcher, and the possibility Grisham and the heckling onlookers were armed does not support finding Hatcher's use of force to effectuate the arrest was objectively unreasonable.

In sum, viewed in the light most favorable to Grisham, the summary judgment evidence shows Grisham's injury, if any, was *de minimis*, and the amount of force used was not excessive as a matter of law. Thus, Plaintiffs have not shown Hatcher violated Grisham's right to be free of excessive force and cannot rebut Hatcher's defense of qualified immunity. Summary judgment is therefore granted for Hatcher on Grisham's excessive force claim.

## B.     Violation of rights under the First Amendment

Plaintiffs claim that Defendants violated their "right, protected under the First Amendment to the United States Constitution, to be present in a public forum, gather with likeminded individuals, and speak on a matter of public concern." Second Am. Compl. [#46] ¶ 160. Arguing "the right to be present and engage in expressive conduct in a traditional public forum is a clearly established Constitutional right[,]" Plaintiffs contend Defendants violated that right when they prohibited them from carrying fake guns as symbols of their political beliefs on the Capitol Grounds.

Courts have discretion to address either part of the two-step qualified immunity analysis first. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Because it is determinative in this context, the Court first evaluates whether Plaintiffs' purported right was clearly established at the time of Plaintiffs' arrests.

For a right to be clearly established, it must be "sufficiently clear that every reasonable

official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S.
Ct. 305, 308 (2015) (internal quotation marks and citation omitted). In examining whether "existing
precedent . . . placed the statutory or constitutional question beyond debate[,]" the United States
Supreme Court has "repeatedly told courts . . . not to define clearly established law at high level of
generality." *Id.* (internal quotation marks and citations omitted). Rather than as a broad general
proposition, an evaluating court must analyze the "specific context of the case" because "it is
difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual
situation the officer confronts." *Id.*

The formulation of the right at issue offered by Plaintiffs is too broad; it fails to reflect the
specific context of the case. Defendants did not deny Plaintiffs the right to peacefully assemble on
the Capitol Grounds or advocate for open carry. Instead, Defendants only ordered Grisham,
Kuenstler, and Walker to remove their fake guns from the Capitol Grounds. In fact, Defendants
Rivas and Farias merely conditioned Kuenstler and Walker's entry into the Capitol Building on them
returning the fake guns to their vehicles. Rather than asking whether existing precedent established
a right to assemble and advocate for a political beliefs, the relevant inquiry is whether existing
precedent placed the conclusion Defendants acted unreasonably in excluding fake guns from the
Capitol Grounds beyond debate. *See Mullenix*, 136 S. Ct. at 309 ("The relevant inquiry is whether
existing precedent placed the conclusion that [the officer] acted unreasonably in these circumstances
beyond debate." (internal quotation marks and citation omitted)).

Simply put, Plaintiffs have offered no case indicating excluding fake guns from a public
forum was an inappropriate response by Defendants. Instead, Plaintiffs offer three cases that would
require a significant logical leap to apply to the facts of this case. All three of the cases Plaintiffs cite

-15-

stand for the proposition that a person may wear clothing items in a public place to show their political beliefs. *See* Resp. [#66] at 17 (citing *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) (holding, in absence of facts demonstrating disruption of school activities, regulation prohibiting wearing black armbands to school to express political beliefs was unconstitutional); and then citing *Schacht v. United States*, 398 U.S. 58 (1970) (striking down section of statute prohibiting actor wearing an American military uniform from disparaging the military); and finally citing *Smith v. Tarrant Cty. Coll. Dist.*, 694 F. Supp. 2d 610, 637 (N.D. Tex. 2010) (finding college's actions preventing students from wearing empty gun holsters on campus or in the classroom violated the students' First Amendment right to free speech)). Beyond a conclusory statement "[t]here is no good faith distinction between an empty gun holster and one with a toy in it[,]" Plaintiffs provide no legal authority indicating a fake gun should be treated the same as an armband or empty gun holster. Resp. [#66] at 17. Thus, Plaintiffs have not met their burden to show Defendants' conduct infringed on a right "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *See Reichle*, 132 S. Ct. at 2093.

By contrast, Defendants emphasize how no precedent "squarely governs" the right to display fake weapons. Mot. Summ. J. [#65] at 12 (citing *Mullenix*, 136 S. Ct. at 309). Instead, Defendants provide evidence firearms and other deadly weapons were prohibited on the Capitol Grounds and in the Capitol Building. Oct. 17, 2013 Minutes at 3–4. Furthermore, Defendants highlight security reasons a reasonable officer would treat a fake weapon like a real weapon. Mot. Summ. J. [#65-20] Ex. P (Media Reports) (presenting a compilation of media reports describing how weapons are being disguised as toys and how experienced law enforcement struggles to differentiate real and fake

weapons).[3]

In sum, because the right to display fake weapons as symbolic speech was not beyond debate, the Court finds Defendants are entitled to qualified immunity to protect their actions in ordering Plaintiffs to take their fake weapons off the Capitol Grounds.

## C.    False Arrest

"A warrantless arrest without probable cause violates clearly established law defining an individual's rights under the Fourth Amendment." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 391 (5th Cir. 2017) (citing *Hogan v. Cunningham*, 722 F.3d 725, 731 (5th Cir. 2013)). But even if probable cause did not in fact exist, law enforcement officials are entitled to qualified immunity "if a reasonable officer could have believed the arrest to have been lawful, in light of clearly established law and the information the arresting officers possessed." *Morgan v. City of DeSoto, Tex.*, 900 F.2d 811, 814 (5th Cir. 1990) (citing *Anderson v. Creighton*, 483 U.S. 635, 643 (1987)). Officers are therefore entitled to qualified immunity unless there was no actual probable cause for the arrest and the officers were objectively unreasonable in believing there was probable cause for the arrest. *Davidson*, 848 F.3d at 391–92. Whether, under the circumstances, a reasonable officer could have believed probable cause for an arrest existed and is therefore entitled to qualified immunity is a question of law. *See Pierce*, 117 F.3d at 871 (citing *Hunter v. Bryant*, 502 U.S. 224, 226–29 (1991)).

"Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that

---

[3] Plaintiffs object to the Media Reports and move to strike them for lack of authentication, lack of foundation for admission, and lack of reliance by Defendants. Resp. [#66] at 2. The Court overrules Plaintiffs' objections. *See U.S. ex rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 673, 680 (W.D. Tex. 2006) (collecting cases showing courts can take judicial notice of the coverage and existence of news media).

the suspect had committed or was committing an offense." *Mesa v. Prejean*, 543 F.3d 264, 269 (5th Cir. 2008). Officials who "reasonably but mistakenly conclude that probable cause is present" are still entitled to qualified immunity. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009). As Plaintiffs were each arrested for criminal trespass, Plaintiffs must show the Defendants "lacked arguable (that is, reasonable but mistaken) probable cause" to arrest the individual Plaintiffs for criminal trespass to defeat qualified immunity. *See id.*

Defining the offense of criminal trespass, Texas Penal Code § 30.05(a) provides:

A person commits an offense if the person enters or remains on or in property of another, including residential land, agricultural land, a recreational vehicle park, a building, or an aircraft or other vehicle, without effective consent and the person:

(1) had notice that the entry was forbidden; or

(2) received notice to depart but failed to do so.

"Notice" is defined in the statute to include "oral or written communication by the owner or someone with apparent authority to act for the owner." Tex. Penal Code § 30.05(b)(2)(A).

Collectively, Plaintiffs rely on *Morgan v. City of DeSoto, Tex.*, 900 F.2d 811 (5th Cir. 1990) to argue a fact issue exists on whether Plaintiffs received valid notice. Resp. [#66] at 19. But the facts of *Morgan* are distinguishable from the facts here and Plaintiffs' argument obfuscates the relevant standard.

Although both this case and *Morgan* concern arrests for criminal trespass, in *Morgan* the arresting officers did not themselves tell the plaintiffs they needed to depart before arresting plaintiffs for criminal trespass. *See Morgan,* 900 F.2d at 812–13. Rather, the arresting officers in *Morgan* relied on signs prohibiting trespassing by non-patrons and loitering. *Id.* at 813. Thus, in evaluating the question whether a reasonable officers could have thought the plaintiffs committed

criminal trespass, the Fifth Circuit examined "whether the signs posted on the property indicated that entry was forbidden and were reasonably likely to come to the attention of intruders." *Id.* at 814. The Fifth Circuit explicitly noted the relevant inquiry was not whether the plaintiffs actually received notice entry was forbidden. *Id.* ("It was not necessary that the sign be seen by the arrestee or that it be visible to them from any particular place."). With these facts, the Fifth Circuit ruled "[w]hether a reasonable officer could have concluded that there was a reasonable likelihood that these signs . . . would have come to the attention of an intruder, [was] a question of fact." *Id.* at 814–15.

Here, it is undisputed DPS officers understood openly-carried weapons were prohibited on the Capitol Grounds and individuals carrying firearms or deadly weapons, other than authorized under a CHL, were to be afforded an opportunity to comply with an officer's request prior to enforcement action. *See* Oct. 17, 2013 Minutes at 3–4. It is also undisputed that, prior to Plaintiff's arrests, each Plaintiff was instructed to leave the Capitol Grounds. Specifically, Houghton ordered Grisham to take his weapons off the grounds multiple times. Pls.' Grisham Video at 03:01–21; Defs.' Grisham Video at 0:22–48. Likewise, Rivas and Farias also ordered Kuenstler and Walker to leave the grounds and place their fake weapons in their vehicles before entering the Capitol Building. Kuenstler's Offense Report at 5; Walker Aff. ¶ 7. Furthermore, it is undisputed DPS had primary responsibility for law enforcement and security concerning the Capitol Complex, which includes the Capitol Building and the Capitol Grounds. Tex. Gov't Code § 411.062(a), (d). Finally, it is undisputed Grisham, Kuenstler, and Walker remained on the Capitol Grounds despite the orders to depart. Pls.' Grisham Video at 3:01–24; Defs.' Grisham Video at 0:28–54; Kuenstler's Offense Report at 5; Walker Aff. ¶ 8.

Consequently, looking at only the undisputed facts, the Court finds a reasonable officer in

Defendants' positions could have believed they had probable cause to arrest Plaintiffs for remaining

on the Capitol Grounds without effective consent after receiving notice to depart and failing to do

so. *See* Tex. Penal Code § 30.05(a). Thus, because a reasonable officer in Defendants' position had

arguable probable cause to arrest Plaintiffs for criminal trespass, the Court finds Defendants are

entitled to qualified immunity as a matter of law.

However, even if Defendants did not have arguable cause to arrest Plaintiffs, the

independent-intermediary doctrine applies to bar the false arrest claims against Hatcher, Houghton,

and Rivas. Under the independent-intermediary doctrine, "if facts supporting an arrest are placed

before an independent intermediary such as a magistrate or grand jury, the intermediary's decision

breaks the chain of causation for the Fourth Amendment violation." *Jennings v. Patton*, 644 F.3d

297, 300–01 (5th Cir. 2011). The rule applies even if the intermediary acted after the arrest. *Buehler*

*v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 554 (5th Cir. 2016). It does not apply, though,

if "it can be shown that the deliberations of [the] intermediary were in some way tainted by the

actions of the defendant." *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988).

Defendants have shown Grisham and Kuenstler were both brought before a magistrate judge,

who found probable cause support Grisham and Kuenstler's arrests. Grisham Offense Report at 7–8;

Kuenstler Offense Report at 10–11.[4]

The Court finds Plaintiffs' arguments against the independent-intermediary doctrine

---

[4] While Defendants argue the independent-intermediary doctrine also applies to Walker's arrest, Defendants do not provide a probable cause determination for Walker. Instead Defendants only cite to statements indicating Walker was released on bond subject to certain conditions. Mot. Summ. J. [#65] at 19 & n.75 (citing Second Am. Compl. ¶ 155). Defendants claim the statements concerning bond conditions amount to an admission Walker appeared before a judicial officer who found probable cause. *Id.* However, in the same paragraph of the second amended complaint, Plaintiffs also reported Walker's case was "set for a probable cause hearing on January 28, 2016." Second Am. Compl. ¶ 155. A reference to bond conditions in conjunction with a forthcoming probable cause determination is not enough, without more, to support to support the independent-intermediary doctrine for summary judgment purposes.

unpersuasive. Plaintiffs assert the independent-intermediary doctrine must be explicitly raised as an affirmative defense in a defendant's answer to apply. Resp. [#66] at 13. But Plaintiffs offer no legal authority to support their assertion. *see id.* Additionally, Plaintiffs brazenly ask this Court to overrule the independent-intermediary doctrine. *Id.* at 13–14. Bound by principle of stare decisis, this Court, of course, declines.

Significantly, Plaintiffs offered no competent summary-judgment evidence to suggest Defendants in any way tainted the magistrate judges' finding of probable cause. *See Buehler*, 824 F.3d at 555 ("[T]he plaintiff must affirmatively show that the defendants tainted the intermediary's decision.") (internal quotation marks, alterations, and citations omitted). Although Plaintiffs cite a myriad of additional facts the Defendants did not include in their probable cause affidavits, Plaintiffs do not show any of these facts could possibly exculpatory. *See* Resp. [#66] at 15–16. In fact, Plaintiffs provide no indication of how these facts are relevant for a charge of criminal trespass. *Id.* Thus, Plaintiffs made no showing Defendants affirmatively tainted the intermediaries' decisions and therefore Hatcher, Houghton, and Rivas are also entitled to qualified immunity under the independent-intermediary doctrine.

## Conclusion

In short, the Court finds Defendants are entitled to qualified immunity. First, on Grisham's claim of excessive use of force, Plaintiffs have not shown Hatcher violated Grisham's right to be free of excessive force and thus cannot rebut Hatcher's defense of qualified immunity. Second, Plaintiffs have not shown the right to display fake weapons as symbolic speech was clearly established at the time of the arrests and therefore cannot rebut Defendants' qualified immunity defense for their claims brought under the First Amendment. Third, a reasonable officer in Defendants' position had

arguable probable cause to arrest Plaintiffs for criminal trespass. Alternatively, as an independent intermediary found probable cause following Grisham and Kuenstler's arrests, Hatcher, Houghton, and Rivas are shielded from Plaintiffs' false arrest claims by the independent-intermediary doctrine. Consequently, the Court GRANTS the Defendants' motion for summary judgment.

Accordingly:

IT IS ORDERED that Defendants' Motion for Summary Judgment [#65] is GRANTED.

SIGNED this the 26th day of June 2017.

SAM SPARKS
UNITED STATES DISTRICT JUDGE